Thank you, Your Honor. May it please the Court, Gwen Thawe for Appellant and Cross-Appley Jillian Osherwich. When Ms. Osherwich voted in 2018, an election worker ordered her to the restroom to turn her Houston Firefighters t-shirt inside out before she was permitted to cast her ballot. The Texas statutes that censor voter apparel violate the First Amendment under an application of the Supreme Court's decision in Minnesota Voters Alliance v. Mansky to the summary judgment record in this case. Mr. Fogg, so there are some threshold justiciability issues, ex parte young and standing. I want to be sure that we address those first. Let me ask you this. Let's assume, I mean, we have a number of decisions from our court saying that the Texas Secretary of State is not the right defendant to sue. I've written several of them. We have several decisions saying Ken Paxson is not the right person to sue. I know that Judge Clement has written one of those at least. But there are other people sued here and I just want to get clear who else was sued because the caption in this case is Isabel Longoria in her official capacity as Harris County Elections Administrator. Was Longoria sued initially? I just want to get clear on who was sued. Yes, Your Honor. So, originally we sued Diane Troutman in her capacity as Harris County Clerk. The election administration duties from Harris County has transferred from the Harris County Clerk to the Elections Administrator and that's why we substituted in the Election Administrator, the party stipulated to substituting in the Elections Administrator for Harris County. Okay. I see, you know, I at least see some indication in the record that someone is ordering or at least instructing the election judges about how to apply these laws. Who is that person within the structure of Texas law and was that person sued? Yes, Your Honor. So, the person that trains the election judges, that's the Harris County Election, back then it was the Administrator of Elections, now it's the Elections Administrator. I guess for present purposes, that's Longoria? Right. So, I don't know if she personally does the training herself, but that department does the training for Harris County Election. Well, I mean, training is one thing because I'm not sure that's enough for ex parte on purposes, but I see evidence in the record, correct me if I'm wrong, where the application of this particular statute, I assume it's 010. I'm a little confused about which statute is being applied here, but let's assume it's 61.010. I see evidence in the record that when this statute was applied to make Ms. Ostrowich turn her shirt inside out, the very next day, the command came down from on high that said that's not the right way to apply it. She shouldn't have been asked to turn her shirt inside out. Is that what the record shows? So, I think there are three points there, and let me just try to make sure I remember all of them. So, in the first point, the Harris County ex parte young doesn't come in with respect to the Harris County defendants, the DA and the Election Administrator here. The ex parte young comes in with the Secretary of State and the Attorney General because they're state defendants who would otherwise be entitled to sovereign immunity. So, Harris County, I think, is in regardless of where the ex parte young analysis of other defendants is. The person who instructed, sent out what in the record is called a handy message to the election judges was the elections administrator of elections. So, at that time, it's Sonia Astin, and her deposition testimony is in the record here. And then, trying to recall the third, the third point is, with respect to the handy message, I think it was a determination by the, by Ms. Astin that there, you know, there was another shirt that said expressly advocated for the proposition on the ballot. It said vote for Prop B, and she said those should be continued to be banned, but the, just the Houston Firefighters t-shirt that Jillian Oshel, which was wearing that day, you know, those had been banned at some polling places, not on others, and that the enforcement of those statutes against sexist voters was causing a substantial disruption. And Ms. Astin testified, she sent out a handy message to the date after Ms. Oshel, which voted, they were no longer banned. All right. I take your point about ex parte young, that with ex parte young, you're saying we're talking about the state defendants, we're not talking about the Harris County officials? Correct, Your Honor. Okay. And with respect to the state defendants, if I may, I'm familiar with those decisions, I think Richardson, cases like that from the last term. As I understand the court's decisions in those cases, and also in Texas Democratic Party, the ex parte young, the court's ex parte young doctrine really calls for a provision by provision determination of that question. So it's not that the Secretary of State is a proper defendant for all provisions of the Texas Division Code. It's also not the case that the Secretary of State is just categorically immune from a challenge for all provisions of the Texas Election Codes. It's a provision by provision analysis. And I think there are three reasons why the Secretary of State is a proper defendant with respect to these three statutes that we're talking about here. And I just want to, I just recall the point you were, Your Honor, was making. I can't tell which statute's being applied. So the primary voter apparel, there's no dispute between the parties on this. The primary voter apparel statutes are sections 61.003 and 85.036. And the difference is 003 applies on election day, and 036 applies... I get that. But you're saying those statutes, the parties agree that those statutes... They're the... ...apply to the wearing of apparel? So that's how Texas has consistently enforced it. That's how Texas has, you know, instructed election judges, election officials to enforce it. I think the district court made a fair point in that the statutes, the Texas statutes themselves do not unambiguously prohibit voter apparel. Say a word about voter apparel. Correct. And I think that's the reason, that is one of the primary reasons that the Secretary of State, it has direct involvement with respect to the particular provisions that were challenged in this case. Election, here's, here's 003. Electioneering includes the posting, use, or distribution of political signs or literature. Right. And, and this Ostrowich, when was she posting, using, or distributing political signs or literature? She was not, Your Honor. She was wearing a t-shirt. But Texas has consistently applied that electioneering prohibition against voters wearing t-shirt. And I think that's why, that's what makes the Secretary of State a primary defendant under, or, or a proper defendant under ex parte young here. Because election judges, if they were just enforcing that statute as it's written, I think they may not apply it to voter apparel at all. But it's the Secretary of State that instructs, that ultimately they train the county officials and the county officials train the election judges. The state's trainings, handbooks, advisories, and email communications, um, instruct election workers and election officials that those provisions apply to voters. I think what you're saying is the evidence in this record would allow you to get around, or get around, to distinguish the Secretary of State cases that I've written? Correct, Your Honor. Because, okay, I get it. We'll have to take a close look at that. And just two other points about the Secretary of State. I think that point in itself is enough. But the Secretary of State, you also have deposition testimony that you can find on pages 723 and 1800 of the record. And that's deposition testimony both by the state's 30B6 opponent, the Chief Elections Officer, and also the, the then Harris County Administrator of Elections, saying that the Secretary of State and the Harris County Elections Administrator have discussed and sporadically make ad hoc calls about particular pieces of apparel. And then finally, you have the 30, the state's 30B6 opponent testifying that election workers must follow his directives on what the statutes prohibit. General Paxton, we, we agree that's a much closer call, but I think General Paxton is also a proper defendant, given what the district court said, that this is a, this is a, uh, these are statutes that impose criminal punishments. And not just that, uh, this is a free speech case where the risk of chilling speech is all the more significant. But, and that's why I think, uh, General Paxton is also... And I don't want to, just turning from justiciability to the merits, I mean, what do we do with the fact that Mansky, Supreme Court sort of pre-blessed 61.010A? I mean, we've all read it. So Judge Duncan, I, I, I know what point you're talking about. Obviously the, the quotation from Minnesota Voters Alliance, I have two points to make on that. So 61.10, you know, I think given 60, the other two statutes that we all agree are the primary statutes at issue, 61.10, I think we do make the argument in the alternative that it applies to not to voter apparel, but to poll worker name tags and batches. And we have... Oh, I can imagine that, that somebody wanted it to say that. It just doesn't say that. It says a person. Fair. But if you look at the record evidence, Your Honor, you see that it, it doesn't really, the, the logical way in which 61.10 was enacted, it was a later enacted statutes after the two other statutes that were already, you know, under Texas's view, prohibiting voter apparel. And those two statutes apply to past, present and future elections. And 61.10 applies to current elections. So our contention is that it really doesn't make sense for the state to enact what is a pretty much duplicative statute as it already had earlier, if all it wanted to do was to apply it solely to voter apparel. But to get to that MVA question directly, 61.10, the Supreme Court stressed, even though it said it viewed just by reading the statutory text, 61.10 might appear more before us. All it had, all the Supreme Court had in MVA was the record with respect to the Minnesota law at issue. But if the Supreme Court had the record in this case, I don't think there's any question in my mind that the Supreme Court would have held that 61.10 is also unconstitutional because you apply the principles that the Supreme Court enunciated in Minnesota Voters Alliance v. Mansky. So the Supreme Court said there has to be objective and a sensible basis for what may come in and what must stay out of the polling place. And in that regard, I feel like the, the summary judgment evidence is, raises even more problems about the Texas statutes here compared to the law in Minnesota. In Minnesota, uh, in the MVA case, Minnesota had at least attempted to issue such standards through an election mandate policy that ultimately failed to remedy the constitutional defects because the courts had things like electoral choices and recognizable political views, uh, what did not, did not provide objective workable standards. But here, Texas has offered nothing of the sort in advisories to the public, training to election officials and handbooks to election worker. Rather, by design, Texas leaves it up to one of the over 9,000 election judges or the. Not really, because I mean, the statute says it's got to relate to a candidate measure or political party appearing on the ballot. I mean, that's a pretty concrete limitation. Uh, and the problem in this case is, is she was wearing a t-shirt that was basically a brand of the pro proposition firefighter folks. I mean, I know it, her shirt didn't say vote for Proposition B or I think that's what it was called. But I mean, it otherwise looked exactly alike. And so the statute says, I mean, it seems to come with some fairly plain vanilla prescriptions about what conduct it's prescribing. It's campaigning in the polling place. No, Your Honor. So it does. It does. It is narrower than 61.03 and 85.03. Right. Those statutes don't say anything about the measures or parties appearing on the ballot. I mean, it just kind of says generally candidates or measures or political parties, right? Correct, Your Honor. But you have to look at the summary judgment record in this case. And the Supreme Court made that, made clear in MBA that the summary judgment record must reveal that the government has provided some sensible basis for distinguishing between what may come in and what must stay out of the polling place. And if you look at the, the, the MBA decision, the Supreme Court used a few hypotheticals and said that the possibility of inconsistent enforcement and haphazard enforcement was too great of a risk for the First Amendment to bear. But here, the record shows many instances of inconsistent interpretation and haphazard enforcement among many individuals responsible for implementing the Texas statutes. As Ms. Ostrowich highlights on page 17 of her opening brief, there are widespread disagreements between election workers, county election officials, and state election officials on the proper application of those statutes to a wide range. So the mere, I, I, that's obviously true. Um, but does the mere fact that there's disagreement mean that it doesn't meet the standard in the Manskate case? It does in this case, Your Honor. And I would encourage Your Honor to look at the, um, Center for Investigative Reporting decision out of the Third Circuit. There, the court said, well, if you had one or two inconsistencies, that might not be enough to raise a First Amendment case. If you had one or two inconsistencies, that suggests that there was no, uh, there are no objective workable standards and there's no sensible basis for determining, for distinguishing between what is prohibited and what is permitted. I'm just struggling with that a little bit because, I mean, in Mississippi, I know when I was working for the Secretary of State's office, I don't know that you've ever had a statewide election where there's not some inconsistencies between polling places from the top of the state to the bottom. And what you're seeming to argue for is sort of a more, not perfect maybe, but a very standardized application of, of standards or else it's unconstitutional. That just doesn't seem to be, I'm, I'm just having trouble as a practical matter reconciling what I know about elections administration. Judge, Judge Wilson, I'm just asking for an application of what the Supreme Court said in MVA and that's objective workable standards. Well, but they, they listed this one statute as the exemplar for that. Sure, but the, but the, but the, um, the inconsistent interpretation by election workers with many years of experience, on the ground experience enforcing the statutes, they disagree not just on one or two examples, they disagree on everything. NRA, Black Lives Matter, Tea Party, Houston Firefighters, all things that, you know, I, I don't think it makes a difference whether they're on the ballot or off the ballot. I think the election judges, judges were relating them to something that's on the ballot. So you look at the summary judgment here and what was the record in MVA, I think there's, there's no question that with that summary judgment record, all three statutes in this case are unconstitutional. Thank you. Thank you. You have time for rebuttal. Mr. Abrams. Thank you, Judge Duncan, and may it please the court. My name is Michael Abrams and I represent the Texas Secretary of State and Attorney General. And I'd like to start with the jurisdictional issues that you noted in your questions, Judge Duncan. This case is jurisdictionally barred in all respects and I want to walk through the analysis of why that's the case. So first, with respect to the Texas Secretary of State and Attorney General, they have sovereign immunity both with respect to the nominal damages and prospective damages claims. They do not enforce the election hearing statutes. Instead, that is a function of local election officials on the ground in each precinct. Does the Secretary of State's office give binding opinions, construing or recommending guidance with regard to the application of the laws? Not, not in this instance, Your Honor. Here, the, at most what they're doing is giving informal advice to local election officials. And oftentimes, they might not be confronted with all the facts. And so that's why they try to just, you know, understand that they're being presented with, you know, some information, maybe not all. And that's why they are, the Secretary of State is hesitant to say something binding with respect to one official in a precinct because that local official is in the best position to know what is on the ballot. So they don't send out advisory opinions to statewide election officials? I mean, I'm sorry, to election officials across the state, do this this way? Not, not in that sense, Your Honor. What do you mean? What sense do they do it? They do issue election advisories with general guidance about how to administer elections, but they're not going to be issuing guidance on a particular shirt or a particular apparel item on a ballot in any election. And so, in fact, here you can look to multiple provisions of the election code that make clear that it is the presiding judge who actually enforces the election hearing provisions. And that's 32071, which makes clear that the presiding judge has the responsibility for the conduct and management of the polling place. That's 32075, which makes clear that the presiding judge has the responsibility to enforce the provisions involving election hearing and loitering. And it's 32075C, which makes clear that it is the presiding judge's orders that have the power of a district judge that can be appealed, um, and that the presiding judge has the power to issue an arrest warrant. And so those are all functions of the presiding judge. What about counsel opposite's argument that there's just rife inconsistency even across the precincts in Houston about which t-shirts can come in and which t-shirts can come out? I mean, where, where does the presiding judge's authority to run the precinct collide with the need for consistency because people have rights that should be consistently enforced? Sure, your honor. So I think that that discretion is reined in by 60 by the statute, which talks about candidates measures. What statute are we actually talking about? Well, that's a fair question. Judge Duncan. I mean, we got to figure out whether the statute is is provides more workable standard than the one in Mansky. And I, and I thought the district judge said it was .10, 61.010. But now I'm hearing maybe that it's the other two statutes. So which statute are we talking about? No, I think that what the district judge said is let's look at these three statutes. Obviously the election judge on the ground or the clerk who was saying you have to turn your shirt inside out wasn't saying, and I'm enforcing this pursuant to section 6103 or 85036. So we kind of have to make some, you know, assumptions about what they were applying. And I think if you look at section 61010, that seems to be the most logical place. It doesn't speak to just poll workers. It says a person cannot wear an insignia related to something that was on the ballot. Explain the fact that the next day they changed their mind. And how does that make 61010 a workable standard when the very next day they changed their mind? I don't let people wear T-shirts that say firefighters are good or whatever. Sure, Your Honor. I think that where that comes, where we go with that is that the court in Mansky said there are going to be some close calls. We recognize that election officials are going to have to have some discretion. And I think here that shirt was one of the close calls that was contemplated in Mansky. As my friend on the other side mentioned, there were other shirts that actually had the words Proposition B on it. I think that's an easier call, right? Because the words are actually on the shirt. Whereas the fact that this shirt related to the measure on the ballot had to be, you had to know that by knowing the entire context of what was happening in that community. And we cite to that evidence in our brief of the fact that folks are wearing the shirt to campaign for this measure. And so... If I understand what you just said, does the election judge, the person making the call, need to know the wider context of the election in order to apply this law? I think the judge at a minimum needs to know what's on the ballot. Well, what's on the ballot is different from they decided to wear yellow shirts as a measure, as a means of promoting voting for Prop B. I think here the record is that, the record shows that all the election officials in that, in Houston, knew what was happening with these shirts. But if that, so my problem is, is if that's required to apply the law, that we know, we just know, that it's the yellow shirt. It's the yellow shirt election, right? Yeah, they're all wearing yellow shirts. That starts to get into the problems that Mansky, or whatever we're calling that case, MVA, got to, which is if you're relying on the sort of background knowledge of election judges, then you get into a non-workable standard. So which is it? Is the, do the election officials here need to know that this was the yellow shirt election? Or do they just need to know what's on the ballot? I think they need to know what's on the ballot. And then, you know, here, they need to know that this shirt signified support for a measure that was on the ballot. And I'd like to note, Judge Duncan, that is the exact same kind of issue that could have come up under the Minnesota statute in Mansky, and that the court said that that would be okay. So there were five types of general guidance that election officials provided in Minnesota, and the court said three were fine, two were unconstitutional. And one of the items that the Minnesota election official said, you know, this provides a clear enough standard, was what the court said, was any item in support of or opposition to a ballot question at any election. And the court said, you know, that's clear enough. That was in the regs that were, whatever it was, the advisory that was... That was in the, correct Judge Duncan, that was in the advisory. And so the court said there, you know, that's clear enough. And the same thing could have come up in Minnesota. Someone could have been wearing a shirt, and an election official might not, might have to decide whether a particular shirt related to a measure or not. And that's where the Supreme Court said, that's fine. Where it sort of veered off course was where the election officials issued guidance that said any issue-oriented material, or material promoting a group with recognizable political views. And that's where the Secretary of State has distinguished our law from the Minnesota law. So for example, under Minnesota law, you couldn't wear a shirt that said ACLU or the National Rifle Association. And you can do that here. And so... The plaintiff could actually wear the same exact T-shirt at issue in the election in November. That's correct, Your Honor. And in fact, there's testimony in the record. So this is at 7-12 to 13, which is Keith Ingram saying, who's the Secretary of State's Director of Elections. This shirt would have been fine in Dallas. You know, this measure isn't on the ballot in Dallas. And then you have testimony from Sonia Astin, who's the Director of Elections, that in a future election, this shirt would be fine. And that was in Harris County. And actually, I'd like to show why... You say this shirt. What are you talking about? Because we now know that the shirt that she wore would have been fine during the election. I'm talking about the Houston Firefighter shirt with the union logo that doesn't say Proposition B. But we know now, maybe I'm misunderstanding. I thought that we now know that that shirt would have been fine when she wore it. Well, the testimony from the Director of Elections was that it was a call that the local official could make, that it actually, it was related to something. Okay, I'll make it more concrete then. She voted on June the 1st. Correct. There were problems. There was some guidance given. The same shirt is worn on June the 4th. Is it okay now? Under the guidance from the Harris County clerk, if the presiding judge followed it, yes, she would have been able to wear that. Which actually, Your Honor, goes to the issue of standing. Yeah, and I was going to, I'm sorry, I don't mean to interrupt, but we flip from justiciability to merits. And you had said earlier that Secretary of State plus Paxton, that's ex parte young sovereign immunity. They're out. That's your argument. Why is the case not justiciable then if we're just talking about the election officials that have been sued here? Sure. So let me focus first on the prospective claim for an injunction or declaratory relief, and then I'll shift to the nominal damages claim. So there are a couple issues with the prospective claim for injunctive relief. First, if you look at page 5, footnote 2 of Osterwich's brief, she has moved to New Braunfels. So she is no longer living in Harris County. And so she's not going to be voting in Harris County in a future election. And so it's unclear how an injunction that would apply to Harris County officials would do anything to remedy her subjective fear of prosecution. But even putting that aside, she hasn't sued the right officials because those officials, the Harris County, well, the Harris County District Attorney has prosecutorial authority, but the Harris County District Attorney has not prosecuted any of these cases in a decade. And there's no evidence that the Harris County District Attorney had any involvement in the issues here. But wouldn't the elections officials turn her over to the District Attorney? I mean, isn't that enough? It's theoretically possible, but the record shows that there's there been no prosecutions either from the Attorney General. But I mean, we get into like moribund statutes and non-moribund statutes, but the one here is not moribund. I mean, in other words, it could be enforced. It hasn't been over the last decade. Right. It's been enforced through on-the-ground officials telling folks, OK, you know, you should turn that shirt inside out. And obviously that's why we're here. Right. So people have complied. But if somebody comes in and says, I'm not I'm not changing my shirt, well, the theoretical possibility of prosecution would be fairly real at that point, would it not? Well, the Secretary of State's guidance to local election officials is that if you if you're confronted with a voter who is being challenging and doesn't want to remove their shirt, just let them vote and leave, which the Secretary of State, you've said, is out of this case, in your view, because the Secretary of State just kind of gives general advisory. So who cares what the Secretary of State says? Well, the record evidence from the Secretary of State and from local election officials is that most folks comply with directives from officials when they're being instructed to turn. Most folks are going to comply with an unconstitutional directive, too. I mean, the reality is that doesn't mean it's suddenly constitutional because, well, the compliance rate's high on this, you know. Well, I think here the focus is in the I mean, I sort of concur in Judge Duncan's point there that there's a tension here where the Secretary of State's out of the case and we don't issue any binding guidance. But wait, we give guidance telling them how to do this. I mean, be careful. No, I appreciate that, Judge Wilson. I think here, though, the issue is, does she intend to engage in proscribed conduct in a future election? And here the record is that and the whole issue is, can she wear this yellow T-shirt in another election? Is it that or is it is it just more general? See, I had a little bit of a struggle reading the briefs to figure out what prospective conduct she was afraid of being chilled. If she just has a wardrobe of shirts that she wants to kind of tailor to each election or . . . How about voting while wearing clothes? That's the prospective conduct. Well, Your Honor, I think if you look at it from that perspective, then you run into a problem under City of Los Angeles v. Lyons where you're not talking about the same kind of conduct. And both the district court and Osterwich in her brief cite the fear of future prosecution as being wearing that particular shirt. So that's what we're . . . that's the conduct that we're talking about. And if we were to go beyond that to think about, well, could she be barred from wearing some other kind of shirt, that would get into the kind of impermissible advisory opinion. Fair enough. What about the nominal damages? Sure. So that claim isn't moot. We agree with that. But she still has not shown that that injury was traceable to the defendants that she has sued. So . . . What about Longoria? So that's the Harris County Election Administrator. If anything, and as you discussed with my friend on the other side, the Election Administrator hadn't given any guidance the day that Osterwich voted. And then the day after Osterwich voted, the guidance was you should wear these shirts. So if you look at page six of Osterwich's brief, she says this was a policy promulgated by the presiding judge. And Osterwich knew who that judge was. Her name was Catherine Gray. She'd opposed that judge. And that is the judge, if you look at the election code, who's actually responsible for administering the electioneering provisions. So . . . and this isn't a hide-the-ball jurisdictional argument. We've made this argument consistently from the beginning of the case through summary judgment and then on appeal. That if you're going to sue any official, it has to be the presiding judge. Because that is the official who actually caused any injury that she suffered in 2018. Now Aston, I've read Aston's deposition. So Aston, is Longoria now the equivalent of Aston in this case? Aston was working under the election clerk. So Aston's position was the Administrator of Elections for the Harris County Clerk. Okay, if Aston told the presiding election judge the day after this happened, that's not the way we apply this statute. The shirt that Osterwich wore was okay. Does the presiding election judge have to follow that? Your Honor, speaking of that testimony, the answer from Sonia Aston was, they should, but I can't force them to. And that's on page 709 of the record, where she was asked this precise question. She was asked, would the plaintiff be able to wear this shirt? And her exact answer was, the judges have control over the polls, and they're supposed to do what we recommend that they do. I can't guarantee that everything I ask them to do, they're going to do. Well, they're supposed to do what we recommend them to do. That doesn't mean they're supposed to follow what we say. Well, they are, sure, they're supposed to follow the guidance, and they're supposed to follow the Secretary of State's guidance. But at the end of the day, the election code bestows authority in each precinct, in each precinct. So you're saying, because they didn't sue the presiding judge, there's no traceability and redressability? Correct. So there's no standing? Correct. As to her nominal damages claim. As to the nominal damages claim. Okay. I also just want to note one other issue with respect to Manski and juice disability, because the district court and my friend on the other side suggest that, well, since the court proceeded to the merits in Manski, then there must be jurisdiction. In Manski, you had multiple plaintiffs suing multiple defendants, and the court didn't address jurisdiction at all. So I think there, and we know that drive-by jurisdictional rulings are not binding, I think at most we can presume there that the court found that one plaintiff had standing to sue one defendant under the election officials and their responsibilities under Minnesota law. But I don't think that that negates any of this court's ex parte jurisdiction or standing framework generally. Yeah. I mean, standing here as a representative of the state of Texas or the Attorney General, can you represent to me that, traditionally, I mean, that's the wrong word, do Texas officials understand themselves as enforcing 61.010 or the other two much broader statutes? Because counsel on the other side said, well, everyone agrees that it's actually the much broader ones, which frankly could be a problem under Manski if it's the broader ones. But now we're talking about the 010. So which is it? Is there confusion about which statutes? Is there, what's going on? A couple of points on that, Your Honor. First, as the district court noted, there's been no definitive Texas court interpretation of how these statutes intersect. So that may be part of the issue, is just no one is suing these local election officials under Texas law, and we haven't seen a binding declaration on how these statutes intersect with one another. So the district court did the best job that it could, making an eerie guess about how the Texas courts would construe these statutes. And I think here what the district court did is apply the narrowest statute and looking at Osterwich's as-applied retrospective claim and tried to analyze, was there a constitutional basis for Osterwich to be instructed not to wear that shirt to the polls? And the district court comprehensively analyzed the cases, analyzed the statute, analyzed the evidence, and came to that conclusion. Yeah, it's weird. It's not, I mean, it's, I take it eerie guess. This is not a diversity case, right? I mean, this is a First Amendment, it's a federal question. So it's weird to talk about eerie guesses in a case like this. It's just, I find it strange that here you obviously have an encounter between an official and a citizen that implicates the First Amendment. There's no doubt about that. And we're supposed to, after we get past justiciability, we're supposed to figure out whether the particular statute that's being applied here meets the requirements of Manski. And yet, it's not clear to me what statute we're talking about. I agree with you that 010 looks like it is the better choice because at least it mentions badge, insignia, emblem, or other similar communicative device, at least it mentions wearing. So, it's just weird. Judge Juncker, I agree that that's the statute we should be looking at because that's the statute that the district court looked at. And I agree it relates to an insignia, wearing something. So that would seem to be the most logical place to start with the analysis. And then, really, if you put aside the jurisdictional issues, the only place that the district court sort of went off course after it analyzed Section 61010 is to get into the other statutes when there was no reason to reach those issues. And that's where we should be. Yeah. I didn't think that was a little odd. It sort of had an advisory flavor to it. Let me ask you this. Do you agree that subsection A of 010, which just says a person, applies to voters, whereas subsection B specifies election judge, election clerk? Is that the right way to read the statute? I think so, Your Honor. It's true. Section 61010A does not refer to a poll worker. It refers to a person. And so a person who's in a polling place can be a voter. And then, it's true, Section 61010A. You don't normally talk about persons, voters, wearing badges. There seems to be a disconnect there. Your Honor, it's possible that the statute could have been worded.  I know. But, I mean, a badge could be a campaign worker who's coming in to vote, and they've got a name tag or a button. That's true. It could also be an election poll watcher who says, you know, Cori Wilson for representative, poll watcher John Smith, and they're sitting in the polling place. You can't do that either. So you can't have the candidate's logo sort of imported in by a name badge. I mean, I can see that. See, Judge Wilson had to run for office at some point, so he knows about this stuff. Well, I spent a couple, few years in the Secretary of State's office also in Mississippi, and they at least echo. But so, I don't know, I can at least conjecture a badge and singular emblem, any of those categories easily coming into the precinct on Election Day. What did the Minnesota statute say? Do you recall what the specific language is? It was, the Minnesota statute talked about political badge or political button. But did it specifically say voters? That I'm not sure about. So I see my time is up. Okay. That's fine. Thank you. We'd ask the court to reverse on jurisdiction and render judgment on this particular case. Okay. Thank you, counsel. Mr. Fah. Thank you, Judge Duncan. A few points along with record sites. So, on page 1677 of the record, you have the advisory from the Secretary of State's office telling election officials and, and just advising the public that the statute 61.03 and 85.036 applies not just to clothing buttons, but also that was in 2020 during the coronavirus pandemic, that it also applies to face masks. So you have involvement from the Secretary of State there and you have the application of the statutes to apparel. In terms of, you know, Your Honor asked a question about what's the statute we're talking about, 61.10 or the other two statutes. The record is comprehensive that the primary, with the dispute about like which statute, whether 61.10 applies at all, everybody, the record is clear that 61.03 and 85.036 are the primary statutes governing voter apparel. And I would just direct this court to page 2064 of the record. That's the state's reply on the motion for summary judgment. And they contended that Ms. Oshelich didn't even have standing to challenge 61.10 because it had nothing to do, in their view, with a badge, insignia, emblem, or so on. And then if you look at the election advisories, the same election advisory as I cited earlier, 1677, and also a letter written by Mr. Ingram in 2018 that's in the record at 1928. Both those statutes talk about voter apparel and only cite 61.03 and 85.036. And I think that distinction is important for a few reasons, and one of them, as Your Honor mentioned, is that those other statutes, the primary apparel statutes, do not contain this on-the-ballot qualifier. So they've told election officials that, yes, this applies to Reagan-Bush T-shirts, Obama T-shirts, things like that. And although Ingram did testify that he didn't view the Houston Firefighters T-shirt as banned in future elections, because those two statutes don't distinguish between on the current ballot or on a past ballot, I think under that interpretation, the T-shirt, the Houston Firefighters T-shirt, would be banned in future elections as well if they were banned in the current election. And in any event, in a facial challenge, we do have as-applied claims as well, but in a facial challenge, you don't look at the particular, one particular piece of apparel. Ms. Auschwitz testified in her deposition that she asserts the right to wear any T-shirt. She believes that she has a right to wear any T-shirt in her closet, and she might well wear any T-shirt. And she's holding off on wearing the specific yellow T-shirt until she gets the results of this case. But she asserts the right to wear what she wants when she goes to the polls. You asked about Sonia Astin and the Harris County Elections Administrator. The record shows that the Harris County Election Administrator can remove election judges. Election judges have to, are supposed to follow her commands. And they're paid. I believe election judges are also paid by Harris County when they're serving as election judges. Do you think there's justiciability as to the election, Harris County election officials that were sued? Certainly, Your Honor. And I would note, it's not just NBA, it's Burson, it's Shermer. Any election case would have come out the complete other way, and I don't think it would have even reached the merits if you adopted the state's justiciability arguments here. And one final point with respect to the in-supporter opposition, I think in NBA, you have to read that in context with displaying the name of certain apparel. So a vote yes might be covered under that view, but Julian's Houston Firefighters T-shirt would not be covered under that view because you run into the problems identified by the Supreme Court. Okay. Thank you, counsel, for a well-argued case on both sides. We'll take the case under submission.